**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Alvin J. Kangas and Jessica Pease-Kangas, | ) | |
| | ) | |
| Plaintiffs, | ) | **ORDER GRANTING DEFENDANTS'** |
| | ) | **MOTION TO DISMISS** |
| vs. | ) | |
| | ) | Case No. 1:12-cv-008 |
| Amy M. Kieffer and Gray & Associates, L.L.P., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is the Defendants' "Motion for Dismissal Under Rule 12, Fed. R. Civ. P." filed on February 14, 2012. <u>See</u> Docket No. 6. The Plaintiffs filed a response in opposition to the motion on February 29, 2012. <u>See</u> Docket No. 13. The Defendants filed a reply brief on March 14, 2012. <u>See</u> Docket No. 15. For the reasons explained below, the motion is granted.

## I. <u>BACKGROUND</u>

The plaintiffs, Alvin J. Kangas and Jessica Pease-Kangas, are residents of Selfridge, North Dakota. They own a home with the address 1396 Bashaw Valley Road, Shell Lake, Wisconsin. Defendant Amy M. Kieffer is a lawyer residing in Wisconsin. She is employed by Defendant Gray & Associates, L.L.P., a Wisconsin law firm. No lawyers employed by Gray & Associates, including Kieffer, are licensed to practice law in North Dakota.

On September 25, 2011, Wells Fargo Home Mortgage ("Wells Fargo") sent a letter to Alvin Kangas explaining that his loan was delinquent in the amount of $2,946.98. <u>See</u> Docket No. 2-1. Wells Fargo states in the letter that if the loan is not brought current by October 25, 2011, "we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your

ownership in the property by a foreclosure proceeding, which could result in Lender or another person acquiring ownership of the property." <u>See</u> Docket No. 2-1.

On November 29, 2011, Gray & Associates sent a letter to Alvin Kangas stating that it had been retained by Wells Fargo to collect the mortgage debt. <u>See</u> Docket No. 2-2. At that time, the total amount due to pay off the loan was $169,017.06. Gray & Associates states in the letter, "If you are currently in bankruptcy or have been discharged in bankruptcy, this letter is not an attempt to collect the debt from you personally. This letter serves only as notice of the commencement of a legal proceeding as required by the mortgage loan documents, state law and/or federal law." <u>See</u> Docket No. 2-2.

On November 29, 2011, lawyer Amy Kieffer filed a complaint in the circuit court of Burnett County, Wisconsin, seeking foreclosure of the mortgage. <u>See</u> Docket No. 5. The complaint states:

> 6. The mortgagors expressly agreed to the reduced redemption period provisions contained in Chapter 846 of the Wisconsin Statutes; the plaintiff hereby elects to proceed under section 846.103(2) with a three month period of redemption; thereby waiving judgment for any deficiency against every party who is personally liable for the debt, and to consent that the owner, unless he or she abandons the property, may remain in possession and be entitled to all rents and profits therefrom to the date of confirmation of the sale by the court.

<u>See</u> Docket No. 5. Wells Fargo requested the following relief:

> 1. Judgment of foreclosure and sale of the mortgaged premises in accordance with the provisions of section 846.103(2) of the Wisconsin Statutes, with plaintiff expressly waiving its right to obtain a deficiency judgment against any defendant in this action.

> 2. That the amounts due the plaintiff from the mortgagor defendants for principal, interest, taxes, insurance, costs of suit and attorney fees be determined.

> 3. That the defendants, and all persons claiming under them be barred from all rights in said premises, except that right to redeem.

4. That the premises be sold for payment of the amount due to the plaintiff, together with interest, reasonable attorney fees and costs, costs of sale and any advances made for the benefit and preservation of the premises until confirmation of sale.

5. That the defendants and all persons claiming under them be enjoined from committing waste or doing any act that may impair the value of the mortgaged premises; and

That the plaintiff have such other and further judgment order or relief as may be just and equitable.

See Docket No. 5.

On December 8, 2011, Julie A. Griebenow, a Gray & Associates employee, sent a letter to Firefly Legal, Inc., located in Mokena, Illinois. See Docket No. 2-3. The letter requests that Firefly Legal, Inc. serve copies of a summons and complaint on Alvin Kangas and Jessica Pease-Kangas at their home in Selfridge, North Dakota.

Alvin Kangas and Jessica Pease-Kangas filed a complaint in the South Central Judicial District Court in Sioux County, North Dakota on December 27, 2011. See Docket No. 1-1. They allege the Defendants have violated the Federal Debt Collection Practices Act ("FDCPA") "by engaging in a deceptive and abusive debt collection practice, namely by trying to collect a debt in North Dakota without a North Dakota collection agency license and without being eligible for any exemption from that licensing requirement." See Docket No. 1-1. Alvin Kangas and Jessica Pease-Kangas request the following relief:

12. For a judgment of at least $50,000.00 against each Collector for violation of FDCPA.

13. For an award of statutory damages of $1,000.00, attorney fees, and costs for the FDCPA violations.

14. On all issues so triable, for trial by jury of at least 9 members.

15.     For such other relief, legal and equitable, to which Consumers show they are
        entitled as supported by the evidence adduced at trial.

<u>See</u> Docket No. 1-1.  The Defendants removed the case to federal court on January 17, 2012.  <u>See</u>

Docket No. 1.

On February 14, 2012, the Defendants filed a "Motion for Dismissal Under Rule 12, Fed.

R. Civ. P."  <u>See</u> Docket No. 6.  The Defendants argue the complaint fails to state a claim because

foreclosure activities are not debt collection under the FDCPA.  The Defendants also contend the

federal court does not have personal jurisdiction over them.

Alvin Kangas and Jessica Pease-Kangas contend the Defendants are "debt collectors" under

the FDCPA because the loan was in default before Gray & Associates sent notice to the Plaintiffs,

and the Plaintiffs may be subject to a deficiency judgment as a result of the foreclosure action.  The

Plaintiffs argue the Court has personal jurisdiction over the Defendants because the Defendants have

committed a tort within the District of North Dakota.


## II.     <u>LEGAL DISCUSSION</u>

### A.     <u>FAILURE TO STATE A CLAIM</u>

Kieffer and Gray & Associates contend the complaint fails to state a claim.  Rule 12(b)(6)

of the Federal Rules of Civil Procedure mandates dismissal of a complaint if there has been a failure

to state a claim upon which relief can be granted.  In order to survive a motion to dismiss under Rule

12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir.

2009) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)) (internal quotations removed).  A

plaintiff must show "that success on the merits is more than a 'sheer possibility.'"  <u>Id.</u> (citing

Ashcroft, 556 U.S. at 678).  A complaint is sufficient if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft, 556 U.S. at 678).  The court must accept all factual allegations as true, except for "legal conclusions or 'formulaic recitation of the elements of a cause of action.'" Id. (quoting Ashcroft, 556 U.S. at 681).  The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quoting Ashcroft, 556 U.S. at 679).

The Federal Debt Collection Practices Act ("FDCPA") provides the following definitions:

(5)     The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

(6)     The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include–

(A)     any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B)     any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C)     any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D)     any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E)     any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F)     any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a.  The FDCPA further provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

(5)     The threat to take any action that cannot legally be taken or that is not intended to be taken.

15 U.S.C. § 1692e(5).

The Eighth Circuit Court of Appeals has explained the relationship between the FDCPA and state law:

The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation.  Only those collection activities that use "any false, deceptive, or misleading representation or means," including "[t]he threat to take any action that cannot legally be taken" under state law, will also constitute FDCPA

6

violations. See 15 U.S.C. § 1692e(5); [Picht v. Jon R. Hawks, Ltd., 236 F.3d 446, 448 (8th Cir. 2001)].

Carlson v. First Revenue Assurance, 359 F.3d 1015, 1018 (8th Cir. 2004).

Alvin Kangas and Jessica Pease-Kangas contend that Kieffer and Gray & Associates have violated the FDCPA by attempting to collect a debt in North Dakota without holding a collection agency license, as required by Section 13-05-02 of the North Dakota Century Code. Kieffer and Gray & Associates argue that their foreclosure activities do not constitute debt collection. The District Court for the District of Minnesota has explained:

> The FDCPA does not define "the collection of any debt." However, the statute's definition of a "debt collector" clearly reflects Congress's intent to distinguish between "the collection of any debts" and "the enforcement of security interests." 15 U.S.C. § 1692a(6). The first sentence of that definition defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Id. § 1692a(6). The third sentence of § 1692a(6) provides that for purposes of § 1692f(6),10 a debt collector is also "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." If a party satisfies the first sentence, it is a debt collector for purposes of the entire FDCPA. See Kaltenbach, 464 F.3d at 529. If a party satisfies only the third sentence, its debt collector status is limited to § 1692f(6). However, if the enforcement of a security interest was synonymous with debt collection, the third sentence would be surplusage because any business with a principal purpose of enforcing security interests would also have the principal purpose of collecting debts. Therefore, to avoid this result, the court determines that the enforcement of a security interest, including a lien foreclosure, does not constitute the "collection of any debt." See Jasa v. Millard Pub. Sch. Dist. No. 17, 206 F.3d 813, 815 (8th cir.2000) (noting "principle of statutory construction that avoids creating mere surplusage").

Gray v. Four Oak Court Ass'n, Inc., 580 F. Supp. 2d 883, 887-88 (D. Minn. 2008). The Court has previously cited Gray for the proposition that foreclosure activities are not debt collection for purposes of the Fair Debt Collection Practices Act. See Bray v. Bank of Am., No. 1:09-cv-075, 2011 WL 30307, at *7-8 (D.N.D. Jan. 5, 2011). Based on the Gray court's reasoning, the Court

finds that Kieffer and Gray & Associates are not subject to the Fair Debt Collection Practices Act in this case because their foreclosure activities in this particular case do not constitute debt collection. Therefore, the complaint fails to state a claim. Kieffer and Gray & Associates' motion to dismiss is granted.

### B.    PERSONAL JURISDICTION

Kieffer and Gray & Associates also contend the Court does not have personal jurisdiction over them. "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th Cir. 2003) (citing Falkirk Min. Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 373 (8th Cir. 1990); Watlow Elec. Mfg. v. Patch Rubber Co., 838 F.2d 999, 1000 (8th Cir. 1988)). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004). The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction. Epps, 327 F.3d 642, 647 (citations omitted).

The jurisdiction of North Dakota courts is governed by the North Dakota long-arm statute set forth in Rule 4(b)(2) of the North Dakota Rules of Civil Procedure. The North Dakota Supreme Court has held that Rule 4(b)(2) "authorizes North Dakota courts to exercise jurisdiction over nonresident defendants to the fullest extent permitted by due process . . . ." Hansen v. Scott, 2002 ND 101, ¶ 16, 645 N.W.2d 223 (citing Auction Effertz, Ltd. v. Schecher, 2000 ND 109, ¶ 6, 611 N.W.2d 173; Hust v. Northern Log, Inc., 297 N.W.2d 429, 431 (N.D. 1980)). The Eighth Circuit

Court of Appeals has held that when a state construes its long-arm statute to grant jurisdiction to the fullest extent permitted by the Constitution, the Court must determine whether the exercise of personal jurisdiction comports with due process. Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006); Oriental Trading Co, Inc. v. Firetti, 236 F.3d 938, 943 (8th Cir. 2001); Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994); see Hansen, 2002 ND 101, ¶ 23 (recognizing that a federal court sitting in diversity may collapse the two-step framework under North Dakota law).

"Due process requires minimum contacts between [a] non-resident defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Dever, 380 F.3d at 1073 (citing Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980)). There are two categories of minimum contacts with a state that may subject a defendant to jurisdiction in that forum, general and specific. With respect to general jurisdiction over a defendant, "a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984)). A state has specific jurisdiction over a defendant when the suit arises out of, or is related to, the defendant's contacts with the forum state. Johnson, 444 F.3d at 956 (citing Helicopteros, 466 U.S. at 414).

Both categories of minimum contacts require some act by which the defendant purposely avails himself or herself of the privilege of conducting activities within the forum state, and thus invokes the benefits and protections of its laws. If a court determines that a defendant has minimum

contacts with the forum state, the court must then consider "'whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" <u>Id.</u> (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476 (1985)).

The Eighth Circuit has established a five-part test for measuring minimum contacts for purposes of asserting personal jurisdiction over a defendant: (1) the nature and quality of a defendants' contacts with a forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. <u>Dever</u>, 380 F.3d at 1073-74 (citing <u>Burlington Indus., Inc.</u>, 97 F.3d 1100 at 1102). In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances. <u>Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.</u>, 51 F.3d 1383, 1388 (8th Cir. 1995). The Eighth Circuit affords "significant weight" to the first three factors. <u>Romak USA, Inc. v. Rich</u>, 384 F. 3d 979, 984 (8th Cir. 2004) (citing <u>Dever</u>, 380 F.3d at 1073-74). The Eighth Circuit's five-part test "essentially blends" the tests for general and specific jurisdiction. 1 Litigation of International Disputes in U.S. Courts § 1:4. <u>Specific and General Jurisdiction</u> (Sept. 2006).


### 1.      NATURE AND QUALITY OF CONTACTS

In examining the nature and quality of the contacts, the primary issue is whether the non-resident defendant has "fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign." <u>Gould v. P.T. Krakatau Steel</u>, 957 F.2d 573, 576 (8th Cir. 1993) (citing <u>Shaffer v. Heitner</u>, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)). The fair warning

requirement will be satisfied if the defendant has "purposefully directed" his or her activities at the residents of the forum state.  Id. (citing Burger King, 471 U.S. at 472).  The contact(s) with the forum state must be more than "random, fortuitous, or attenuated."  Id.  The contact(s) must not be the result of "unilateral activity of another party or a third person."  Id.

The Defendants contacts with North Dakota consist of a letter sent from Gray & Associates, to Alvin Kangas on November 29, 2011.  See Docket No. 2-2.  Gray & Associates also sent a letter to Firefly Legal, Inc. in Mokena, Illinois, who served Kangas and Pease-Kangas with the foreclosure summons and complaint.  See Docket No. 2-3.  The Eighth Circuit Court of Appeals has said that "contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause."  Porter v. Berall, 293 F.3d 1073, 1076 (8th Cir. 2002) (citing T.J. Raney & Sons, Inc. v. Sec. Sav. & Loan Assoc., 749 F.2d 523, 525 (8th Cir.1984)).  The Defendants' contacts with North Dakota were conducted exclusively through the mail.  The Court finds that the nature and quality of the contacts with North Dakota does not support the exercise of personal jurisdiction.


## 2. QUANTITY OF CONTACTS

It is well-established that specific jurisdiction can arise from a single contact with the forum state.  Fulton v. Chicago, Rock Island & P.R. Co., 481 F.2d 326, 334-36 (8th Cir. 1973).  However, when specific jurisdiction is being alleged the quantity of contacts is not determinative.  West Publishing Co. v. Stanley, No. Civ. 03-5832 (JRT/FLN), 2004 WL 73590, *4 (D.Minn. Jan. 7, 2004) (citing Marquette Nat'l Bank of Minneapolis v. Norris, 270 N.W.2d 290, 295 (Minn. 1978); McGee v. Int'l Life Ins. Col., 355 U.S. 220, 223 (1957); Marshall v. Inn of Madeline Island, 610 N.W.2d

670, 674 (Minn. Ct. App. 2000)). Therefore, the Court is not concerned with the number of contacts made for purposes of whether specific jurisdiction exists.

Quantity is a consideration when general jurisdiction is alleged, especially when applying the *Zippo* test to determine jurisdiction. Lakin v. Prudential Securities, Inc., 348 F.3d 704, 712 (8th Cir. 2003). General jurisdiction arises with continuous and systematic contacts. Helicopteros Nacionales de Colombia, 466 U.S. at 415-16. The Defendants contact with the forum state consists of one letter sent to Alvin Kangas. The Court finds that the quantity of contacts was not continuous and systematic, and this factor does not weigh in favor of exercising personal jurisdiction under general jurisdiction analysis.

### 3.      RELATION OF CONTACTS TO CAUSE OF ACTION

The Defendants' contact with North Dakota (the letter sent to Alvin Kangas) was sent to "serve[] as notice of the commencement of a legal proceeding as required by the mortgage loan documents, state law and/or federal law." See Docket No. 2-2. Kangas and Pease-Kangas allege that the mailing of this letter and the filing of the foreclosure action in Wisconsin violate the Fair Debt Collection Practices Act. Therefore, the Court finds that the contacts are directly related to this cause of action and this factor arguably weighs in favor of exercising personal jurisdiction.

### 4.      INTEREST OF THE FORUM STATE

It is well-established in the Eighth Circuit that the first three factors as outlined above are of "primary importance," and the last two factors are of "secondary importance." Stanton v. St. Jude Med., Inc., 340 F.3d 690, 694 (8th Cir. 2003); Northrup King Co., 51 F.3d at 1388; Aaron Ferer &

Sons Co. v. American Compressed Steel Co., 564 F.2d 1206, 1210 n.5 (8th Cir. 1977). The interest of the forum state is the fourth factor to be considered for purposes of exercising personal jurisdiction.

It stands to reason that North Dakota has an interest in adjudicating these claims and providing a forum for its resident. See Aylward v. Fleet Bank, 122 F.3d 616, 618 (8th Cir. 1997) (quickly dispensing with this part of the test by assuming the forum state has an interest in providing a forum for its residents). The Defendants argue, "Under factor three, North Dakota's interest in this proceeding is insignificant because the non-deficiency foreclosure action is being commenced in Wisconsin regarding Wisconsin property." See Docket No. 11. The Court finds that North Dakota's interest in adjudicating this claim is minimal at best, and this factor neither weighs in favor of nor against exercising personal jurisdiction.


### 5. CONVENIENCE OF THE PARTIES

The Defendants are residents of Wisconsin. The Plaintiffs are residents of North Dakota, but own property in Wisconsin that is the subject of the foreclosure action filed in Wisconsin state court. The Court finds that Wisconsin would be a more convenient forum for this dispute. Therefore, this factor weighs against exercising personal jurisdiction.

Based on Kieffer and Gray & Associates' minimal contacts with North Dakota, and the totality of the circumstances, the Court expressly finds that exercising personal jurisdiction over the Defendants would violate due process. See Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1390 (8th Cir. 1997). The exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. The Plaintiffs have failed to sustain their burden of

proof, and have failed to establish the Court's in personam jurisdiction. The Court finds it lacks personal jurisdiction over the Defendants. The Defendants' motion to dismiss based on lack of personal jurisdiction is granted.


III.    **CONCLUSION**

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Defendants' "Motion for Dismissal Under Rule 12, Fed. R. Civ. P." (Docket No. 6) is **GRANTED**. The Plaintiffs' complaint is **DISMISSED**.

**IT IS SO ORDERED**.

Dated this 24th day of April, 2012.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court